A. J. FRAZIER, Respondent, v. St. LOUIS SMELTING & REFINING COMPANY, Appellant.

St. Louis Court of Appeals, July 12, 1910.

1. **MASTER AND SERVANT: Injury to Servant: Live Electric Wire: Sufficiency of Evidence.** In an action for injuries to a servant by a live wire, evidence *held* to justify a finding that the wire was concealed as alleged in the petition.

2. ———: ———: ———: **Care Required of Foreman.** Where a foreman receives notice of the existence of electric currents in the ground where servants are working, and knows that the currents come from some defective wire, he must, irrespective of any other matter in which he is engaged, take instant action to seek out the danger and remove it, and to permit any time to elapse or permit the servants to work in that vicinity with knowledge of the peril is gross negligence.

3. ———: ———: **Instructions: Refusal.** In an action for injuries to a servant, a requested instruction declaring there was no evidence plaintiff had sustained permanent injury was properly refused, where the evidence was sufficient to take the issue of permanent injury to the jury.

4. **INSTRUCTIONS: Singling Out Facts: Naming Witness: Harm-less Error.** Where only one witness testified to a fact, and he was not contradicted, an instruction singling out and commenting on his evidence was not reversible error.

5. **DAMAGES: Personal Injuries: Permanent Injuries: Sufficiency of Evidence: Instructions.** Where the petition, in an action for personal injuries by electric shock, alleged that plaintiff's nervous system was wrecked, and that he was thereby permanently injured, and plaintiff testified that he continued to feel the effects of the shock and that at times he would feel as though he received an electric shock, an instruction permitting damages for physical pain and mental anguish which plaintiff was reasonably sure to suffer in the future was not erroneous, though there was no expert testimony that his injuries were permanent.

Appeal from St. Francois Circuit Court.—*Hon. Chas. A Killian,* Judge.

AFFIRMED.

*Hensley & Revelle* and *T. E. Francis* for appellant; *Boyle & Priest* of counsel.

(1)   The court erred in overruling the demurrer to the evidence for the reason that, under the allegations of the petition, it was essential to a recovery by plaintiff that he prove defendant permitted the wire to be covered over with mud, etc., which he failed to do.   It is elementary that plaintiff will be allowed to recover on the cause of action counted on only.   Yall v. Gillham,

187 Mo. 393; Chitty v. Railroad, 148 Mo. 64; Hesselbach v. St. Louis, 179 Mo. 505. (2) The court erred in overruling the demurrer to the evidence for the further reason that the wire was not down a sufficient length of time before plaintiff came in contact with it to have enabled defendant to discover and repair the same, and defendant was not, therefore, guilty of negligence. Strack v. Telephone Co., 216 Mo. 601; Abbott v. Mining Co., 112 Mo. App. 550. (3) The court erred in overruling the demurrer to the evidence for another reason. Plaintiff was employed to demolish the tanks that supported the wire, in doing which work it necessarily resulted that the wire fell. Plaintiff's injuries, therefore, resulted from one of the ordinary hazards and risks incident to the particular work he was engaged in doing. Hager v. Railroad, 207 Mo. 302; Bradley v. Tea Co., 213 Mo. 320. (4) Plaintiff's instruction number 1 is erroneous for the reason that it permitted a recovery by plaintiff, if the jury believed "defendant negligently permitted an electric wire to be thrown down and covered over with mud, etc.," and that plaintiff while engaged in doing his work, came in contact therewith, when there was no evidence that the wire was covered with mud, etc. (5) Plaintiff's instruction number 4 which defines the measure of damages, is erroneous because it permitted the jury to award damages for "physical pain and mental anguish, which plaintiff is reasonably certain to suffer in the future, in the absence of any evidence that his injuries were permanent or that he might be reasonably expected to suffer therefrom in the future. Prendenville v. Transit Co., 128 Mo. App. 596; Wilbur v. Railroad, 110 Mo. App. 689; Steinmann v. Transit Co., 116 Mo. App. 679. (6) Plaintiff's instruction number 7 is erroneous, because it singles out the evidence of S. V. Shipshire and comments thereon. Zander v. Railroad, 206 Mo. 445; Stoetzle v. Railroad, 210 Mo. 704; Huff v. Railroad, 213 Mo. 495. (7) Plaintiff's instruction number 8 is erroneous for the follow-

ing reasons: (a) Because it permitted a recovery by plaintiff, if the jury believed he was injured by coming in contact with a wire which was covered up, when there was no evidence that said wire was covered up. (b) Because it declares the facts hypothesized to be negligence as a matter of law, instead of submitting that question to the jury to determine as one of fact. Gerber v. Kansas City, 105 Mo. App. 191. (8) The court erred in refusing to give instruction number 8, asked by defendant. There was no evidence that plaintiff suffered any permanent injuries, and the court should have so charged the jury.

*B. H. Boyer* and *George M. Wilson,* for respondent.

(1) It is a well-settled law of Missouri that to authorize the trial court to sustain a demurrer to the evidence, because of insufficiency to authorize a verdict, it must appear that, admitting all evidence introduced by plaintiff to be absolutely true, and giving him every reasonable inference to be deduced therefrom, he is not entitled to recover. A demurrer of this character admits every material fact proven and which may be inferred from the testimony, to be true, and should never be sustained unless the evidence, when thus considered, fails to make proof of some essential fact. Holweg v. Telephone Co., 195 Mo. 165; Knapp v. Hanley, 108 Mo. App. 353; Topley v. Herman, 95 Mo. App. 537; Baird v. Railway, 146 Mo. 265; McManus v. Railroad, 118 Mo. App. 161. (2) The greater the danger to which an employee may be exposed in performing a particular duty, the greater degree of care is imposed upon the master to prevent injury to the servant. This is a principle which prevails throughout the civilized world. Dakan v. Merc. Co., 197 Mo. 238; Goranson v. Mfg. Co., 186 Mo. 300; Robertson v. Packing Co., 115 Mo. App. 520. Therefore, plaintiff being ignorant of the fact that the electric cable was among the debris which he had been or-

dered to remove, and defendant having actual knowledge of the existence of such cable and of the fact that it was a live cable, was guilty of gross negligence, in sending plaintiff to work in the dangerous situation without notifying him, at least, of the danger to be encountered. (3) The verdict and judgment in this case is so undisputedly for the right party, and the instructions read together presented the case to the jury in a light so favorable to defendant that it should not now be heard to complain. Plaintiff's seventh instruction, while mentioning the name of a witness, was yet not erroneous as the jury could not have been misled thereby in the least. This court and all of the appellate courts of Missouri have repeatedly held that where the verdict is manifestly for the right party the judgment will not be reversed because of error in an instruction. Smith v. Railroad, 122 Mo. App. 85; Brunder v. Rockdale P. Co., 115 Mo. App. 102; State ex rel. v. Stone, 111 Mo. App. 364; Herman v. Hartman, 189 Mo. 20; Mullin v. St. Louis Transit Co., 196 Mo. 572; Peterson v. St. Louis Transit Co., 199 Mo. 331.

STATEMENT—Plaintiff brought suit in the circuit court of St. Francois county against the defendant, a corporation engaged in the business of smelting and refining in that county, its works located near the town of Flat River, stating in his petition that while he was in the employ of the defendant and engaged in the duties assigned to him by a foreman and vice-principal of defendant in removing some boards, timbers and debris from a portion of defendant's plant, which was then being torn down, he came in contact with an electric wire which had grounded and over which a strong current of electricity was passing. Plaintiff avers that the wire being covered by mud, dirt, water, timbers, boards and other debris, he did not see it, and that coming in contact with it he was caught by it "and violently hurled about, struck and beat against the ground and

the timbers thereabout and that he was thereby greatly bruised, lacerated and burned about the head, face, limbs, hands and body; that the skin and flesh from the palms of his hands was greatly burned and lacerated, that plaintiff's whole nervous system was by reason of the severe shock received by him by coming in contact with the said live electric wire or cable and the strong current of electricity running thereon, totally and wholly wrecked. . . . . That by reason and as a consequence of his said injuries, he was wholly and totally disabled from performing any manual labor for the space of more than one whole month; that his nervous system was wholly and totally wrecked and that he, was thereby permanently injured and that by reason and as a consequence of his said injuries plaintiff has lost his time and earnings and has, does and now will continue permanently to suffer great bodily pain and mental anguish; and that by reason of his said injuries, plaintiff has been damaged in the sum of one thousand dollars." Judgment is demanded for this amount, the petition containing the usual and proper averments as to the duty of the defendant and that the presence of the live grounded wire was due to the carelessness of the defendant in permitting it to remain in such condition as to completely hide the same from the view of defendant's employees "as was well known to defendant company at the time or might have been known to it by the exercise of reasonable care and caution on its part."

The answer of defendant, admitting its incorporation and ownership and operation of the lead mine and concentrating plant, as charged, denies all other allegations in the petition.

Trial before the court and jury.

Plaintiff gave testimony to the effect that he had been running concentration tables in the mill and they had cut out one section of the mill and he was engaged in helping to pull out that section. He had been tearing some of the stuff out of the mill when set to work

outside at the settling tanks outside to carry away lumber and stuff. His orders from the foreman were to carry the rubbish away—the number and stuff that was there, consisting of old lumber and stuff from the slime tanks. It was muddy and wet around there; mud almost shoe-top deep, and water and stuff around. He went to reach down after a plank and a wire struck him on the leg. It knocked him down, knocking him senseless. One hand was burned in several places. He pointed out to the jury the place where the wire had struck him on the leg and showed his hand. When the foreman directed him to go there to work he said nothing about the wire, and plaintiff did not know of the existence or location of the wire at the time or previous to his injuries; never saw it. The wire was for lighting the works. The place where he came in contact with the wire was wet—a wet and muddy place. When he came to himself he was up in the "changing room." On cross-examination witness testified that he had been working at this particular work in removing timber and debris before he got hold of the wire, about an hour or not quite an hour. This was the first time he had worked at this place. He was familiar with the locality; had worked around these tanks before; knew that the electric wire ran up on top of the tanks. The mud was about shoe-top deep, he repeated, and the wire struck him first just above the shoe-top. Asked if after he felt the wire on his foot or on his leg, he got hold of it with his hand, he answered that he did not remember anything about getting hold of it with his hand. The last he remembered was that it came in contact with his leg, and the next he knew he was in the "changing room." The wire struck him on the leg higher than where the mud and water came to; couldn't say whether the wire was covered by the mud and water or not; did not see it. At the time the wire came in contact with his leg he was in the act of taking up some timber and planks. The plank was on the ground; couldn't say whether it was

on top of the wire or not. Asked if he did not know that the wire wasn't on the ground, he said he didn't know whether it was or not. He was in the act of picking the board up when the wire struck him; doesn't know how he got hold of the wire; doesn't know how long he was unconscious. Had lost some fifteen days' time. Asked the effect of the injury on his nervous system, he said: "It has a right smart. . . . . I feel the effect of it, yet, at times, and pretty often, too. . . . . Sometimes I feel yet just as though I was in the wire like I was, almost, at that time. I can't hardly move at times. . . . Maybe every two or three days I feel that way. . . . It gives it to me at daytimes and at night, too. I have got that way at night, and sometimes when I would be asleep I would wake up and feel like I was in the electric wire and can't move. . . . . I have not been as strong as I was before—as I was before that shock." Was earning $1.50 a day at time of accident. It appears that there was an averment in the petition, as originally filed, alleging permanent injury to the hand of the plaintiff, but that this was stricken out, the averment of permanency of injury to his nervous system remaining as heretofore stated. Apart from the testimony of plaintiff there was no evidence given as to the permanent nature of the injuries, no experts being called. There was un-contradicted testimony to the effect that plaintiff was severely shocked by the electric current, having to be torn from the wire by fellow-workmen, the witnesses testifying that plaintiff's face and body were contorted and twisted; was lying on the ground struggling and groaning, with the wire in his hand; was unconscious; lying on his side, his face "in a kind of a twist," and "he looked like he was pretty well affected over it;" froth coming from his mouth; "was certainly knocked out and couldn't move hardly." They worked over him about half an hour before getting him loose and bringing him to consciousness. There was also evidence tending to show that while plaintiff and fellow-workmen

Frazier v. Smelting & Refining Co.

were tearing down some of the structure, this wire might have fallen off a tank on which it rested while being torn down, although this is not at all clear. A witness (Hipshire) testified that a short time before this accident happened, in going over the premises, he felt a shock of electricity where he was working, but couldn't say exactly at what point he had felt the current; it was out around the settling tanks, in the vicinity of which the plaintiff was working. The witness Hipshire was working under the same foreman in tearing away the rubbish. Hipshire, upon noticing it, had told the foreman of it; mentioned it to the foreman; after he noticed it, had told the foreman that he felt a current around there somewhere. That was a short time before plaintiff came in contact with the wire. This witness was not working with plaintiff when plaintiff came in contact with the wire, but seeing plaintiff struggling on the ground, went up to where plaintiff was lying and while they were working with him, and he helped to get him off the wire and bring him to. This witness further testified, with reference to the time he saw plaintiff on the ground among these wires and the time he had spoken to the foreman about the current of electricity that it was before plaintiff and the men he was working with came out of the mill after dinner to work. Witness on behalf of plaintiff, as well as plaintiff himself, testified that they had not seen the wire, although they were working within ten feet of where plaintiff was at work and they had been around there a half a day or more. On cross-examination plaintiff, as well as his witnesses, admitted that they could not say whether the wire was under the mud or under debris or where it was, or whether it was covered up. Some of them said on cross-examination, that it was not under boards or in the mud, but all of them said they did not see it at all until it was in plaintiff's hand.

A demurrer to the evidence, offered by the defendant, who introduced no testimony whatever in the case,

was refused. The court gave several instructions at the instance of plaintiff, six at the instance of the defendant, refusing three asked by defendant. There was a verdict for plaintiff in the sum of five hundred dollars and judgment accordingly, from which defendant in due time perfected an appeal to this court, filing a motion for a new trial and duly saving exceptions.

REYNOLDS, P. J. (after stating the facts).—The errors relied on by the learned counsel for the defendant in this case are to the overruling of the demurrer to the evidence, it being claimed that under the allegations of the petition it was essential to a recovery by plaintiff that he prove defendant permitted the wire to be covered over with mud, etc., which it is claimed he failed to do; that the court erred in overruling the demurrer for the further reason that the wire was not down a sufficient length of time before plaintiff came in contact with it to enable defendant to discover and repair the same and defendant was not therefore guilty of negligence; for the further reason that the plaintiff was employed to demolish the tank that supported the wire, in doing which work it necessarily resulted that the wire fell and that plaintiff's injuries, if any, resulted from one of the ordinary hazards and risks incident to the particular work he was engaged in doing. It is urged against instruction number 1, given at the instance of plaintiff, that it permitted a recovery by plaintiff if the jury believed defendant negligently permitted an electric wire to be thrown down and covered over with mud, etc., and that plaintiff while engaged in doing his work came in contact therewith, when, as it is claimed, there is no evidence that the wire was covered with mud, etc. Error is assigned against the giving of the plaintiff's fourth instruction defining the measure of damage in that it permitted the jury to award damages for physical pain and mental anguish which plaintiff is reasonably certain to suffer in the future in the absence of any evi-

dence, as it is claimed, that his injuries are permanent or that he might be reasonably expected to suffer therefrom in the future. The seventh instruction is complained of as error in that it singles out the evidence of the witness Hipshire and comments thereon. Instruction number 8 is attacked as erroneous in that it permitted a recovery by plaintiff if the jury believed he was injured by coming in contact with a wire which was covered up when there was no evidence that the wire was covered up and because it declares the facts hypothesized to be negligence as a matter of law instead of submitting that question to the jury to determine as one of fact. Finally, error is assigned to the refusal of the eighth instruction asked by the defendant, as it is claimed that there was no evidence that the plaintiff suffered any permanent injuries and it is claimed that the court should have so charged the jury.

Taking these assignments up in gross, it is sufficient to say that we do not think any of them are tenable. It is true that the evidence does not show how this wire was situated when plaintiff came in contact with it, for no one saw it. It was not in sight; whether covered up by mud or debris, no one could say. One or more witnesses, under skillful cross-examination, said it was not covered up by anything, but these same witnesses said they never saw it at all until in the hand of plaintiff, and the first that plaintiff knew of it was when it struck him above his shoe top.

It is urged that defendant had no notice of the presence of the wire in time to remove it. There is uncontradicted evidence that before the plaintiff entered upon the work of tearing down the tank on which it is claimed one end of the wire rested, there was a current of electricity going through the ground in that vicinity and that the foreman was told of that fact. That current must have come from some defective or grounded wire. Whether the wire was embedded in the mud or covered by the debris, it was a concealed wire. It is true that

it is not definitely stated just how long before the accident occurred the witness Hipshire had told the foreman, who was the representative of the defendant, of the presence of a current of electricity in that vicinity. It is common knowledge that such a current can only proceed from a grounded wire and the very fact that the foreman was notified that there was electricity in that vicinity, running free through the ground, was such a warning of danger as to demand instant action to trace it to its source. With many men working around in the presence or vicinity of a grounded wire, that fact being communicated to the foreman, it was his business, irrespective of any other matters in which he might have been engaged, to have taken instant action, to have sought out the source of danger and removed it. In such a case, time of notice is not a question of moments, hardly of seconds. To permit any time to elapse or even to have permitted the men to work at all in that vicinity with knowledge of the presence of a deadly peril, involved in the presence of a loose current of electricity, was gross negligence.

The eighth instruction, which was asked at the instance of the defendant, was properly refused. It was tantamount to a declaration that plaintiff had not made out his case.

It is true that the court should not pick out and comment on particular testimony to the exclusion of the whole testimony in the case, nor call attention to that of a particular witness. But in the case at bar no reversible error was committed in this respect. The only witness who testified to the fact of communicating the information as to the current of electricity being in the ground in that vicinity was the witness Hipshire. He was uncontradicted and even in his cross-examination, rigorous as it was, in no way whatever shaken as to his testimony in this respect. Under such facts the error is not reversible error.

The objection to the instruction as to the per-

manency of the injury is not well taken. We have set out the testimony as to that. Plaintiff testified that even down to the day of the trial he felt the effects of this shock, and the allegations of his petition were broad enough to allow the jury to take that into consideration in determining the amount of damage. It did not need expert evidence to aid a jury in so simple a matter.

There was evidence in the case from which the jury could determine and were warranted in arriving at the conclusion that plaintiff's injuries were of such a char-acter as to seriously affect his nervous system, and damage by reason of these injuries is distinctly asked for in his petition. Tested by the amount of the ver-dict, five hundred dollars, it is evident that the jury were not led, either by the evidence or the instructions, into considering the injury sustained, whether per-manent or not, of a very serious character. We are not, on the facts in the case, persuaded that that ver-dict should be disturbed. The judgment of the circuit court is affirmed. All concur.