## Daisy Floyd, Appellee, v. Galva Electric Light Company, Appellant.

## Gen. No. 7,041.

1. ELECTRICITY—*degree of care requisite in furnishing current to purchaser.* A seller of electricity for domestic uses is bound to exercise such degree of care and caution to prevent injury therefrom as is commensurate with the danger incident to the use thereof, and in a personal injuries action by a housewife who received a shock from a wall switch alleged to have been caused by the crossing of high voltage and low voltage wires, it is not error to refuse to instruct the jury that the defendant owed no more of a duty to the plaintiff than to use ordinary and reasonable care in supplying and maintaining proper instrumentalities for the furnishing to the premises of plaintiff of electric current.

2. HARMLESS AND PREJUDICIAL ERROR—*refusal to give instruction covered by another as prejudicial error.* It is not prejudicial error to refuse to instruct the jury, in an action by a housewife for personal injuries caused by a shock of electricity received from a wall switch, that the burden is upon plaintiff to prove by a preponderance of evidence that the electric company knew of the dangerous condition of the wires, or by the exercise of reasonable care might have known of such condition, where the question of notice to such company of the condition of the wires was fully covered in other instructions.

3. DAMAGES—*right to recover doctor's bill in personal injuries action.* In an action by a housewife who was injured by an electric shock from a wall switch, it is not error to instruct the jury that plaintiff is entitled to have taken into account all moneys for which she became liable for doctor's bills, where it was proven without objection that the reasonable value of the medical services rendered was of the specified figure and that plaintiff was liable therefor, although it was not specifically shown that the bill had been paid or any charge made against plaintiff.

4. ELECTRICITY—*variance as to manner of happening of accident.* In an action by a housewife for personal injuries caused by an electric shock, a directed verdict for defendant on the ground of variance between the declaration and the proof is properly refused and the case sent to the jury where, although it is alleged in one count that plaintiff received the shock from touching a wall switch, it is alleged in other counts that she merely came close to the wall switch and that the current jumped therefrom and the evidence shows that she did not touch the switch but came close to it and

that the electricity jumped and struck her, causing the injury.

5. SAVING QUESTIONS FOR REVIEW—*necessity for motion to strike out evidence.* In an action by a housewife for personal injuries received from a shock of electricity which jumped from an overcharged wire and wall switch, evidence that on the same evening that plaintiff was injured the wife of witness in a nearby house also received a shock from the same line cannot be regarded as erroneously received, where no motion to strike such evidence was made in the lower court.

6. ELECTRICITY—*admissibility of evidence of repairs after accident.* In an action for personal injuries received from an electric shock caused by the crossing of high and low voltage wires on which the insulation was worn, it is not error to permit plaintiff to prove that repairs were made on such wire several weeks after the accident occurred, where such evidence was offered in rebuttal of evidence by the defendant with reference to repairs.

7. HARMLESS AND PREJUDICIAL ERROR—*exclusion of cumulative evidence not error.* In a personal injuries action by one who was injured by an electric shock resulting from overcharged wires connecting with a wall switch in plaintiff's home, it is not error to refuse to permit defendant to question the plaintiff as to whether she had tuberculosis prior to receiving the injury sued on, where the physical condition of the plaintiff before and after the injury was fully brought out in the examination of medical witnesses.

8. ELECTRICITY—*variance in proof of strength of current causing injury.* Under a declaration charging that plaintiff's injuries were caused by receiving an electric charge in excess of 110 volts, to wit, 2,300 volts, there is no failure of proof where plaintiff proved that she received a shock in excess of 110 volts and there was evidence tending to show that the shock resulted from the crossing of high and low voltage wires of which the high voltage carried over 2,300 volts, even though plaintiff did not prove the exact voltage received by her.

9. DAMAGES—*excessiveness of verdict.* A verdict for $2,000 for personal injuries received from an electric shock is not excessive where the evidence shows that prior to the injury plaintiff was strong, not nervous, able to sleep and do her own housework and devote a portion of her time to sewing for other people for hire, but that since the injury she has been weak and nervous and has not regained full use of her right leg, arm and foot and that she suffers great pain and a weakened condition of her body from the shock and that she received a severe nervous shock from the current in question.

Appeal by defendant from the Circuit Court of Henry county; the Hon. EMERY C. GRAVES, Judge, presiding. Heard in this court

Floyd v. Galva Electric Light Co., 227 Ill. App. 541.

at the October term, 1921.   Affirmed.   Opinion filed January 24,
1923.   *Certiorari* denied by Supreme Court (making opinion final).

BURTON & HAMILTON, for appellant.

BURTON A. TYLER and STURTZ & EWAN, for appellee.

MR. JUSTICE JETT delivered the opinion of the court.
The appellee obtained a judgment in this cause for
$2,000, in the circuit court of Henry county, against
the appellant as damages for personal injuries re-
ceived by her from a shock of electricity through a
wall switch, in her home, the charge being that the
high and low tension wires in the street outside of the
house had become crossed and that she received a
charge of electricity in excess of 110 volts, to wit, 2,300
volts.   It is charged in the first count of the declara-
tion that the appellant was possessed, used and con-
trolled a certain system of poles, electric wires and
cross arms in the village of Cambridge, along and
through the streets, and that among the wires were
certain high tension wires used by appellant for fur-
nishing high and dangerous electric voltage and cur-
rent for motive power, street lighting and other pur-
poses, and that among certain wires there were certain
low tension wires, switches and other electrical de-
vices for delivering current to dwelling houses for
lighting and domestic purposes; that on October 27,
1920, the appellee was residing in Cambridge, in a
house to which appellant furnished electricity by
means of low tension wires, certain electric devices
and switches at and within said dwelling house, and
that when in proper and safe repair and condition the
wires were covered with a heavy coat of insulation and
the high tension wires when in a proper relative posi-
tion were placed at such distance from the low tension
wires that the electricity from the high tension wires
would not pass into or through the low tension wires,

whereby it became the duty of appellant to keep and maintain said wires in proper and safe relative position and sufficiently separated, and the insulation and switches in safe and proper repair so as to prevent the heavy voltage from the high tension wires from entering into and through the low tension wires into the dwelling house occupied by the appellee and the electric switches therein; that the appellant permitted its high tension wires to sag and come in contact with its low tension wires upon which the insulation had become worn and rotten, and portions to have been removed, enabling the high and dangerous current of electricity to pass over the low tension wires into appellee's house, and that the appellee, while in the exercise of due care and caution for her own safety, came in contact with one of the switches charged with such heavy electric current and by reason thereof received the injuries complained of.

The second count averred that the low tension wire when in proper and relative position carried 110 volts of electricity to the dwelling house of appellee but by reason of the negligence of the appellant in failing to keep and maintain the wires in safe and proper repair, electricity came into the house of appellee with a voltage in excess of 110 volts, to wit, 2,300 volts, and that when appellee passed by and near the same she was injured.

The amended third count charged that the wires, switches and other devices employed by appellant in conducting electricity for domestic purposes into the house of the appellee were allowed to become and remain out of repair, and charged with an excessive and dangerous amount of electric current, so that when appellee passed by and near some of the wires and switches and other electric devices she received the injury complained of.

The additional count charges that it was the duty of appellant to manage, control and regulate the quan-

tity and volume of electricity delivered and furnished to the dwelling house of appellee, so as not to endanger her life and limb, but that appellant in disregard of such duty transmitted to said dwelling house an unsafe and dangerous quantity of electric current and that while appellee was engaged in her household duties she was struck down by and received such dangerous charge of electric current, resulting in the injury.

The plea of the general issue was filed. A trial was had by a jury, which found for the appellee in the sum of $2,000, judgment was rendered on the verdict, motion for a new trial denied and this appeal followed.

It is first insisted that the court erred in refusing to give instructions numbered 19 and 20, requested by the appellant. Instruction 19 complained of is as follows: "The court instructs the jury that the defendant owed no more of a duty to the plaintiff than to use ordinary and reasonable care in supplying and maintaining proper instrumentalities for the furnishing to the premises of plaintiff of electric current. And in determining whether it appears from a preponderance of the evidence that the defendant was negligent they should consider whether such preponderance of the evidence shows that the defendant had any notice or reasonable opportunity to know of the conditions which gave rise to the injury, if any, received by the plaintiff."

We think this instruction was properly refused for the reason that it tells the jury that the defendant owed no more duty to the plaintiff than to use ordinary and reasonable care in supplying and maintaining proper instrumentalities for the furnishing to the premises of plaintiff electrical current. We do not understand the rule of law as is laid down in this instruction and as is contended for by appellant. Electricity is a silent, deadly, dangerous and insidious agency, and it is the duty of those handling it to use such a degree of care as is commensurate with the danger incident with its use.

In the case of the *Alton Ry. & Illuminating Co. v. Foulds*, 190 Ill. 367, the court said: "In undertaking, for hire, to deliver electricity into houses for use, the company must use such a degree of care and caution as is commensurate with the danger."

In the case of *Metropolitan St. Ry. Co. v. Gilbert*, 70 Kan. 261, and reported in 3 American and English Annotated Cases, at page 256, the court said: "Although it is everywhere recognized that it is the duty of users of electricity to employ a high degree of diligence to prevent its causing injury to others, in many cases this principle is treated merely as an application of the general rule, and is expressed by the formula that ordinary care is required, proportion to the danger to be averted. But the peculiar conditions involved in cases of injuries by electricity have given rise to a special doctrine, somewhat analogous to that requiring operators of railways to use all possible skill and care for the protection of passengers."

However, in the great majority of cases it is held that a company maintaining and operating wires transmitting dangerous currents of electricity for lighting, motor, or other purposes, is bound to use due or reasonable care to prevent injuries to persons or property by the contact of its wires with the wires of other persons or corporations. What is reasonable, ordinary, or due care, however, is to be graduated and determined by the danger under all the circumstances of the case. As the danger to persons and property from permitting wires heavily charged with electricity to come into contact with other wires is very great, the courts are unanimous in holding that the care required to avoid such contact must be commensurate with the danger.

We therefore conclude that the ruling of the court in refusing instruction 19 is supported by authority.

The twentieth instruction told the jury that the burden was upon the appellee to prove by the preponder-

ance of the evidence that the appellant knew of the dangerous condition of the wires, or by the exercise of reasonable care might have known of such condition. This instruction announced a correct rule of law and could have properly been given. But we are of the opinion that the appellant received the benefit of this instruction in others that were given on the part of said appellant. The question of notice to the appellant was covered by appellant's given instructions four, six and seven. In the fourth given instruction the jury were told that before appellee could recover she must prove the three propositions therein stated, the second of which was that the defendant was guilty of negligence in the manner charged in the declaration. A necessary element of negligence charged in the declaration was that of notice, either actual or constructive.

Instruction 6 told the jury that negligence must be proved as alleged in the declaration by a preponderance of the evidence, and in instruction number 7 the jury were also informed that there could be no recovery unless the injury was occasioned by the negligence of the appellee. In our opinion, appellant was not prejudiced in any way by the refusal of instruction number 20.

Complaint is made of the court in refusing to give instruction number 21, offered by appellant, and in giving the second instruction given on behalf of appellee. In instruction 21, appellant asked the court to instruct the jury that under the pleadings and proof in the case they could not allow anything to the appellee for any doctor's services and medicine. In the second given instruction, on the part of appellee, the jury were instructed among other things that they could take into account all moneys appellee necessarily became liable for for doctor's bills.

In the case of *McCarthy v. Spring Valley Coal Co.,* 243 Ill. 185, where the court had under consideration

the question as is presented by the refusal of instruction 21 and the giving of instruction 2, above mentioned, and on page 188 of said case the court said: "The physician and surgeon who amputated appellee's arm and treated him, after testifying to the services rendered, was asked what the usual and ordinary value or charges for such services were. He answered, 'from $50 to $100.' While the physician did not testify that he had made a charge against appellee, and that appellee had agreed to pay it, his testimony warranted the conclusion that appellee was liable to him for the value of the services rendered, and it was sufficient upon which to base the instruction complained of." In the case under consideration the physician was asked what the value of his services were, and after objection was made by appellant the court addressing the witness said: "In other words, what is your bill?" and the witness said, "$250." In the colloquy between the court and counsel, Mr. Tyler said: "I asked him what was the reasonable, fair value of the services," and the court replied, "That will not do. The question is as to what she has either paid or is liable to pay," when Mr. Tyler answered and said, "And he answered $250," to which the court replied, "Yes, I understand that to be his answer." To all that took place here during the trial when the appellee was seeking to make her proof laying the foundation to recover for medical services, including the colloquy between the court and counsel as above detailed, no motion was made by appellant to exclude the same, and it was permitted to remain in the record by the silence of appellant.

We are of the opinion that no reversible error was committed by the trial court in the refusal of instruction 21, offered by appellant, and in the giving of instruction 2, given on the part of appellee, in which the jury were permitted to take into account all moneys appellee necessarily became liable for for doctor's bills.

At the close of appellee's evidence and again at the close of all the evidence, a motion was made to direct a verdict in favor of appellant on the ground of a variance as to the declaration and the proof, it being contended in support of the claim of a variance, between the declaration and the proof, that the evidence was to the effect that the appellee did not touch the switch from which she received the electric shock but that she came in close contact with it and that the electricity jumped and struck her, causing the injury. There is evidence in the record to show that appellee did touch the switch and there is also evidence tending to show and prove that she did not touch the switch, but it is immaterial so far as this cause is concerned which was correct, for the reason that the first count in the declaration alleged that she did touch the switch, while the other counts charge that she merely came close to it.

As the evidence was sufficient to justify the court in refusing to direct a verdict and as there was no variance, the court committed no error in permitting the case to go to the jury.

Complaint is made that the witness Creighton was permitted to testify that on the same evening on which the appellee received this shock of electricity, his wife in a house near by also received a shock from the same line. We have examined this evidence and find that Creighton was merely asked if anything happened in his house that night and in reply he answered that his wife received a shock of electricity. No motion was made to exclude this answer and in order to assign error on this ground such a motion should have been made.

It is also contended that error was committed in permitting said witness Creighton to testify on behalf of appellee as to certain repairs made on these wires in controversy several weeks after the appellee claimed she received her injuries. This evidence was in rebut-

tal of evidence offered on behalf of the appellant with reference to repairs having been made and for that reason was proper.

Appellant complains of the court below in permitting counsel for appellee to cross-examine and attempt to in a way impeach the witness Irwin, who was called to testify for the appellee. We have examined the record thoroughly relative to this complaint. We do not think that the evidence in this cause shows such a hostility on the part of the witness Irwin as justified some of the questions asked of him by counsel of appellee.

It was claimed that Irwin had made statements out of court contrary to the evidence given on the witness stand and they interrogated him concerning those statements and of his expectation of obtaining a job with appellant's company, with which company he had formerly been employed. Irwin denied all of these statements alleged to have been made by him and also denied any intention of again entering the employ of appellant, and while we do not approve of the cross-examination and of some of the statements made by counsel on both sides, we do not think the character of the examination and the remarks of counsel, in view of the answers made by the witness, are sufficient to work a reversal of the case.

It is next insisted that the court improperly refused the appellant to cross-examine appellee with reference to her physical condition before the time of the injury of which she complains. The record disclosed that the court did permit counsel for appellant to examine appellee quite fully relative to her physical condition before the injury complained of was received.

The court did refuse to permit an answer to a question put to appellee as to whether or not she had been suffering from tuberculosis prior to the injury. We are not prepared to say that this question was altogether improper, but it will be remembered that this

suit was for injuries received as a result of a shock of electricity, and in view of the fact of the evidence brought out on the hearing of the case in the examination of the medical witnesses, the physical condition of the appellee before and after the injury complained of was fully before the jury, and the refusal of the court to permit the question to be answered relative to her having suffered from tuberculosis did not work any injury to appellant.

Appellant also insists that appellee failed to prove that she received 2,300 volts of electricity. The declaration does not charge that she received 2,300 volts but it did allege that she received in excess of 110 volts, to wit, 2,300 volts. It was not material as to the number of volts she received provided she received a shock as charged in the declaration in excess of 110 volts.

There is evidence in the record tending to show that the voltage carried by the high tension wires which had come in contact with the low tension wire was over 2,300 volts.

It is next contended that the verdict of $2,000 is excessive; in respect to this contention we have examined the record carefully.

The evidence discloses that before the injury appellee did not feel nervous, that she was not weak, that she was able to sleep well, and do her own housework, and to devote some of her time to sewing for other people to assist in the support of her family, but that since the injury she has been weak and nervous and that she has not regained the full use of her right arm, leg and foot. That she received a severe nervous shock from the electric current is quite manifest. From the shock she suffered great pain and a weakened condition of her body.

The jury observed the appellee on the stand and heard her give in detail the injuries complained of and the effects thereof. It was for the jury to judge of

the weight and effect of the testimony. We are not inclined to invade the province of the jury and set up our judgment contrary to the conclusion reached by them, in view of the fact that their finding has met with the approval of the trial judge.

We are not prepared to say, from all the facts disclosed by this record bearing upon the injuries sustained by the appellee, that the verdict is excessive.

In conclusion we are of the opinion that substantial justice has been done in this cause, and so viewing the case, the judgment of the lower court is affirmed.

*Affirmed.*