Patrick McCarthy, Appellee, *vs.* The Spring Valley Coal Company, Appellant.

*Opinion filed December 22, 1909.*

1. Trial—*when question whether mule driver knew of dangerous condition of roof is for the jury.* The question whether a mule driver in a coal mine knew of the dangerous condition of the entryway roof which caused his injury is properly left to the jury, where there is evidence that he had never been in the entryway until the afternoon of his injury, which occurred on his third trip; that his only light was his miner's lamp, which had to be turned ahead, and that the roof was mostly so low that he had to bend forward, thus giving him scant opportunity to examine the roof.

2. Instructions—*what evidence justifies instruction as to damages for medical services.* A clause in an instruction permitting the jury to consider as damages any necessary expenses the plaintiff may have been put to in and about caring for himself has a basis in the evidence, where the attending physician, after testifying to the services rendered, stated what the usual charge was for such services, though he did not state that he had made such charge to the plaintiff and that the plaintiff had agreed to pay it.

3. New Trial—*when a new trial for alleged reading of newspaper article should not be granted.* A new trial should not be granted upon the ground that the jurors may have read an alleged damaging article concerning the case, appearing in a newspaper published at the county seat the day before the trial was completed, where there is no competent proof that any of the jurors read the article, although it is shown that one of the jurors was a resident subscriber and ten of them non-resident subscribers to the paper.

APPEAL, from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Bureau county; the Hon. R. M. SKINNER, Judge, presiding.

McDOUGALL, CHAPMAN & BAYNE, for appellant.

DUNCAN, DOYLE & O'CONOR, for appellee.

Mr. CHIEF JUSTICE FARMER delivered the opinion of the court:

This was an action by appellee against appellant to recover damages for a personal injury, and this is the second appeal of the case to this court. On the first trial of the case in the circuit court appellee recovered a judgment for $10,000. Upon appeal to the Appellate Court that court, after requiring a *remittitur* of $2000, affirmed the judgment for $8000. (*Spring Valley Coal Co.* v. *McCarthy,* 136 Ill. App. 473.) On appeal to this court the judgments of the Appellate and trial courts were reversed for the misconduct of counsel for appellee on the trial of the case in the circuit court. (*McCarthy* v. *Spring Valley Coal Co.* 232 Ill. 473.) A second trial of the case in that court resulted in a verdict and judgment for $11,500. Another appeal was prosecuted to the Appellate Court, and that court, after requiring a *remittitur* of $3500, affirmed the judgment for the sum of $8000 and taxed the costs to appellee. This appeal is prosecuted from the judgment of the Appellate Court by defendant below, the Spring Valley Coal Company.

A statement of the case and the pleadings will be found in the opinion of this court on the former appeal and will not be repeated here. For the purposes of this opinion it is sufficient to say that the negligence charged against appellant was, that it allowed the roof of the entryway in the mine through which, in the discharge of his duties, appellee was required to drive a mule hauling a loaded car,

to become and remain in a dangerous and unsafe condition; that appellant had knowledge of such unsafe condition or by the exercise of reasonable diligence might have known of it, and that appellee did not know of it and had not equal means with appellant of knowing of the dangerous condition. While driving his mule in the entryway, as directed by his superior and in the usual and ordinary manner, appellee was injured by a fall of a large amount of rock and earth from the roof. The testimony on the second trial was not substantially different from that on the first, and the substantial merits of the case and the rights of the parties were determined in favor of appellee by this court on the former appeal. We shall therefore not again discuss and pass upon all the questions then decided.

On the second trial numerous objections were made and exceptions preserved to rulings of the court in the admission and exclusion of testimony. Most of these related to permitting or denying a single question to be answered, and some of them were passed upon by us on the former appeal. We have examined the objections made to these rulings not heretofore passed on by us, and are satisfied that they are not meritorious and their importance does not require them to be discussed in detail in this opinion.

It is earnestly insisted that the proof failed to show on the second trial that appellee did not know of the dangerous conditions which caused his injury, and that they were of so patent a character as that he must be presumed to have known of them, and that he therefore assumed the risk of injury. Both these questions were passed upon by us on the former appeal, but it is argued that on the last trial appellee did not state in direct terms that he did not know of the condition of the roof, and from the other proof it must be assumed that he did know of it. Appellee's testimony on the last trial was not substantially different from what it was on the first trial. We have read it from the record. He had never been in the entry-

way where he was injured until the afternoon of the day he was injured, and was making his third trip at the time of the injury. For the most part the roof of the entryway was so low that he had to bend his head down to pass through on his car. He had no lines to drive the mule but guided him by his voice. The only light he had was a miner's lamp on his cap, and this, he testified, was required to be turned in the direction of the mule for his guidance. It is very clear that his opportunities for examining the roof were very poor, and the proof warranted the assumption that he did not see or know of the dangerous conditions complained of. In our former opinion we said (p. 476): "In the discharge of his duties it was impossible for him to make a minute examination of the roof for dangerous conditions. He was not required to do so, but had the right to rely upon the inspection which appellant's other servants employed for that purpose were supposed to have made." The proof was certainly sufficient to justify the court in submitting to the jury whether appellee knew of the dangers and assumed the risk.

It is insisted the court erred in instructing the jury, on the measure of damages, that if they found for appellee they might, among other elements recited, take into consideration "any necessary expenses he may have been put to in and about caring for himself." The objection made is, that there was no evidence upon which to base this element of the instruction. The physician and surgeon who amputated appellee's arm and treated him, after testifying to the services rendered, was asked what the usual and ordinary value or charges for such services were. He answered from $50 to $100. While the physician did not testify that he had made a charge against appellee and that appellee had agreed to pay it, his testimony warranted the conclusion that appellee was liable to him for the value of the services rendered, and it was sufficient upon which to base the instruction complained of.

Lastly, it is urged that the trial court erred in not granting a new trial on account of the misconduct of the jury in reading an article published during the progress of the trial in the *Bureau County Republican,* a local newspaper published in Princeton, the county seat, where the trial was had. On the hearing of the motion for a new trial appellant introduced as an exhibit the paper containing the article complained of. The substance of the article which was published in the local news columns of the paper was, that the case had been taken up for trial the second time; that the case was interesting from the fact that it had been tried once before and a judgment obtained against appellant for $10,000, which the Appellate Court reduced to $8000 and affirmed; that the judgment was reversed by the Supreme Court on a technicality, the claim being that appellee used undue influence on the jury by having his wife and six children in court; that the facts at the time of the first trial seemed conclusive that appellant was liable. The publication was in a paper issued under date of April 23, 1908. The trial was concluded and the jury retired to consider their verdict April 24. The verdict was returned into court April 25. It was not proven that any of the jurors read or heard the article read. Howard J. Bailey testified that he was foreman of the *Bureau County Republican;* that eleven of the jurors were subscribers to the paper; that papers going to subscribers by mail left Princeton on trains leaving there between two and three o'clock. The witness could only state in a general way, from the custom of doing business, that the issue of the paper of April 23 was mailed to the subscribers who were on the jury. Only one of the eleven subscribers resided in Princeton, and it does not appear that the ten who lived elsewhere visited their homes or post-office during the trial. Appellee's case is a meritorious one. His injuries were serious and the loss of his right hand disables him for life. The case has been tried twice in the circuit and

Appellate Courts and is here its second time. The reversal in this court on the first appeal was not for lack of merit in the appellee's case. Under the circumstances we are of opinion the trial court was justified, in the absence of competent proof showing that the article complained of in the newspaper was read by the jury or some of them, in denying the motion for a new trial. The presumptions arising from the facts proven were not, in our judgment, sufficient to make it incumbent upon the trial court to grant a new trial.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*