# JAMES MOUNT v. WESTERN COAL & MINING COMPANY, Appellant.

### Division One, June 16, 1922.

1. **NEGLIGENCE: Mining Coal: Master's Care for Miners.** It is the duty of a coal mining company to use ordinary care to render a miner's working place reasonably safe, and the care required is such as a reasonably prudent man would exercise under like circumstances in order to protect his servants from injury. It must be commensurate with the character of the service required, and with the dangers that a reasonably prudent man would apprehend under the circumstances of each particular case. And a far higher degree of care and diligence is demanded of the master who places his servant at work digging coal beneath overhanging masses of rock and earth in a mine than of him who places his employee on the surface of the earth. But still the burden is on the injured miner to show negligence.

2. ———: ———: ———: **Inspection.** The duty of inspection rests upon the coal mining company, and negligence on the part of those chosen by the company to perform this duty is negligence for which the company is responsible; and any evidence of a dangerous condition of which the company had knowledge, either actual or constructive, is sufficient to take the case to the jury.

3. ———: ———: ———: ———: **Opinion of Non-Responsible Servant Inferred from Inspector's Acts: Demurrer.** The crew of a cutting machine used in a mine for removing earth under the face of the coal consisted of a machine-runner, a jack-setter, a spragger, and a shoveler. The spragger and shoveler were expected to rely upon the others to watch the mine roof, and at the time the roof fell and injured plaintiff he was a shoveler. The jack-setter had nothing to do with inspecting the roof except to call the attention of the machine-runner to any loose rock he discovered as he worked before the machine. It was the duty of the machine-runner to inspect a place thus called to his attention and to determine what was to be done. The jack-setter found some loose rock in the roof and notified the machine-runner, who came forward, looked at the place pointed out to him, sounded the roof, said nothing, but returned to the machine and kept it going. Plaintiff knew nothing of this exchange of words between them or of the condition of the roof, and when, as the machine advanced and he was in the performance of his duties, he reached a position immediate-

ly under this part of the roof, a large part of it fell and injured him. The machine-runner did not testify, and it is upon the testimony of the jack-setter alone that defendant relies to support its contention that the evidence affirmatively shows that the inspection by the machine-runner disclosed no condition so dangerous as to call for further inspection, and that therefore its demurrer to plaintiff's case should have been sustained. *Held*, that the testimony of the jack-setter that he did not think the loose rock he discovered was dangerous was not the conclusion of the inspector, but an opinion of one charged with no duty to determine the question of safety, and was a mere inference drawn from the machine-runner's action in proceeding with the work without pulling down or propping up the loose rock after he had examined it, and was in effect what he thought the machine-runner thought, and therefore of no considerable probative force; and there being other evidence that the roof had been loose for weeks, that a part of it fell three or four days before, that it had been cracked at the point at which it fell and that the vibrations increased the danger as the machine passed under it, the question of reasonable care, including the performance of the duty to inspect, was for the jury.

4. ———: ———: ———: ———: **Plaintiff's Knowledge of Danger: Reliance Upon Inspector.** Where the shoveler, upon whom loose rock fell as he moved forward ahead of the cutting machine in the performance of his duty, is not shown to have known of the dangerous condition of the mine roof and the attendant risk, and the jury is authorized by the evidence to find that he did not know of the one or appreciate the other, it must be held that he had the right to rely upon the assumption that the master had used ordinary care to make the mine roof reasonably safe, and to infer safety from the course pursued by the machine-runner whose duty it was to see to the safety of the roof, there being no conclusive showing of danger so glaring and obvious that a conclusive inference of contributory negligence arises.

5. ———: ———: ———: **Assumption of Risks.** The doctrine of assumption of risks in mines presupposes that the master has performed the duties of caution, care and vigilance which the law imposes upon him, and it is those risks alone which cannot be obviated by the adoption of reasonable measures of precaution which the servant assumes.

6. ———: ———: ———: **Reasonably Safe Place: Shifting Place and Transitory Work.** The rule that the duty of the master to provide a reasonably safe place does not apply where the servant's place of work is transitory and shifting from time to time, applies to a miner working in his room, and does not apply to a place of work

having nothing to do with a changing mine roof. The rule applying to transitory and shifting places of work does not exempt the master from the duty to provide a reasonably safe roof where the servant is employed as a shoveler in connection with a cutting machine used in removing the earth from under the coal face in a pit of ever-widening circles of which the shaft is the center.

7. **EXCESSIVE VERDICT:** $20,000. Plaintiff, aged thirty-one years, a shoveler in connection with a cutting machine used in a coal mine and earning five dollars per day when he worked, was injured by the falling of loose rock from the mine roof. The spinous processes of the eleventh and twelfth vertibrae were fractured, and bony lumps had resulted from nature's effort to remedy this, and enlargements had formed which impinged somewhat upon the nerves and caused pain, but there was probably no injury to the spinal cord itself, and there is no paralysis; he suffered much pain and still suffers some, and this inhibited the use of his legs, so that he was unable to get around except by the use of crutches; it is unlikely that he can resume mining or ever engage in any work requiring lifting; there is still considerable irritation of the nerves, and he will continue to suffer some pain, but the organs of the body perform their natural functions, and his general health is good; and his experts testified that he could probably work at other things, but not at manual labor. *Held*, that a verdict for $20,000 is too large by $5,000.

Appeal from Lafayette Circuit Court.—*Hon. Samuel Davis,* Judge.

AFFIRMED (*upon condition*).

*James F. Green* and *Harvey C. Clark* for appellant.

(1) Where negligence is charged it must be proved. The plaintiff introduced only one witness as to the condition of the roof and the degree of care used by the defendant's machine-runner. This witness testified that the roof was not dangerous; that props were not necessary, and that the machine-runner exercised good judgment in not propping it. (2) Negligence is never presumed, and a party calling a witness to testify to conditions is bound by his testimony, if it constitutes the only evidence in the case on the proposition involved.

(3)   Proof that the roof fell does not raise a presumption of negligence which the defendant must rebut.   No burden falls upon the defendant until plaintiff introduces evidence tending to show a failure to perform some duty devolving upon it.   Unless plaintiff makes such showing the case is not for the jury.   (4)   The first paragraph of plaintiff's instruction numbered 1 tells the jury, in effect, that it was defendant's duty to make the roof absolutely safe, imposing upon it the obligations of an insurer. The only obligation on the defendant was to use ordinary care.   Bowen v. Railroad, 95 Mo. 276;   Williams v. Railroad, 119 Mo. 316.   (5)   The verdict is excessive. Dominick v. Western Coal & Mining Co., 164 S. W. 567; Lessenden v. Railroad, 238 Mo. 247;   Lyons v. Railroad, 253 Mo. 165;   Norris v. Railroad, 239 Mo. 695.

*Lyons & Ristine* and *Horace F. Blackwell* for respondent.

(1)   The court did not err in refusing to instruct the jury to return a verdict for the defendant at the close of plaintiff's case.   Plaintiff's evidence abundantly established his right to have his case submitted to the jury.   Smith v. Kansas City, 125 Mo. App. 150;   Hoover v. Western Coal & Mining Co., 160 Mo. App. 326;   Shimp v. Stove Co., 173 Mo. App. 423;   Boten v. Ice Co., 180 Mo. App. 101;   Anderson v. Western Coal and Mining Co., 138 Mo. App. 76;   Lackland v. Coal Mining Company, 110 Mo. App. 634;   Carter v. Baldwin, 107 Mo. App. 217;   Peetz v. Transfer Co., 198 Mo. App. 155; Snyder v. Mining Co., 206 S. W. 593;   Higberg v. Railroad, 164 Mo. App. 514;   Gambino v. Coal & Coke Co., 180 Mo. App. 643;   Haggard v. McGrew Coal Co., 200 S. W. 1072;   Wojtylak v. Coal Co., 188 Mo. 260;   Adair v. Terminal Ry. Co., 220 S. W. 926;   Corby v. Tel. Co., 231 Mo. 439;   Clark v. Iron & Foundry Co., 234 Mo. 436, 450;   Hall v. Coal & Coke Co., 260 Mo. 351, 365. (2)   The court did not err in giving plaintiff's instruction numbered 1.   This instruction was strictly within the

pleadings and the evidence and has been approved. Popino v. Brick & Coal Co., 168 Mo. App. 547; Gambino v. Coal & Coke Co., 180 Mo. App. 643; Garard v. Coal & Coke Co., 207 Mo. 242, 258. (3) Plaintiff did not know that the roof slate was loose, and he had a right to rely on the judgment of the defendant's machine-runner, who was the boss of the crew. Smith v. Kansas City, 125 Mo. App. 150; Hoover v. Western Coal & Mining Co., 160 Mo. App. 326; Shimp v. Stove Co., 173 Mo. App. 423; Boten v. Ice Co., 180 Mo. App. 96; Anderson v. Western Coal & Mining Co., 138 Mo. App. 76; Corby v. Telephone Co., 231 Mo. 417, 439; Clark v. Iron & Foundry Co., 234 Mo. 436, 450; Adair v. Terminal Railway, 220 S. W. 926; Shortel v. St. Joseph, 104 Mo. 114; Stephens v. Railroad, 96 Mo. 212. (4) . The verdict is not excessive. Yost v. Railroad, 245 Mo. 219; Cambron v. Railway, 165 Mo. 543; Oglesby v. Railroad, 150 Mo. 137; Hill v. Union E. L. & P. Co., 260 Mo. 100; Markey v. Railroad, 185 Mo. 348; Clark v. Railroad, 234 Mo 396; Corby v. Telephone Co., 231 Mo. 417; Moore v. Railroad, 268 Mo. 46; Gordon v. Railroad, 222 Mo. 516; Turnbow v. Rys. Co., 277 Mo. 644; Smith v. Southern Ry., 279 Mo. 173; Waldhier v. Ry. Co., 87 Mo. 37.

JAMES T. BLAIR, J.—Respondent is an experienced coal miner and was injured in appellant's mine. He recovered a judgment for $20,000, and this appeal followed.

The mine is deep. Machines are used to cut the dirt from beneath the coal. The vein is about three feet thick. Beginning at the bottom of the shaft the coal is cut in constantly widening circles of which the shaft is the center. The uncut coal is called the face. The cutting machine is operated by electricity. It weighs 2800 pounds, and stands near the face on rails placed for that purpose. Four rails are employed. The machine stands on two. The other two are placed in front of the machine, and it moves out upon these when it has finished cutting under coal adjacent to it in its position on the

other two. Then these last are taken up and laid in front of the machine again, and so the work proceeds. These machine rails are about six or seven feet long and are held in place by jacks. The cutting machine "has an arm about two and one half feet long upon which works an endless chain. This arm is extended beneath the vein of coal; the moving chain cuts the earth under the coal;" and thereafter "miners, who are called loaders, follow and break it up, load it into small cars which run on a track called the face track, and it is then hauled to the shaft and hoisted to the surface." The refuse which results from this cutting process is thrown back some seven feet from the face, and the heap which is thus created is called the gob. Roadways lead from the shaft to the face. The space along the face is laid out into rooms about eighty feet long. The division lines are imaginary. As the "face of the coal gets farther away from the shaft, the roof slate over the gob is supported by pillars or props." The working place was low, and the men worked in a stooping position. A machine crew consists of a machine-runner, a jack-setter, a spragger and a shoveler. The machine-runner operates the machine and is in charge. The jack-setter, or rail-setter, sets the rails upon which the machine moves along the face. The spragger's duty is to "keep the dirt out away from the machine and away from the chain as it revolves." This he does with a sickle shaped instrument. The shoveler shovels back the dirt and "watches the coal to keep the coal off of him and throws up the rails" from behind the machine when it has moved off of them, and takes down and passes forward the jacks which had held the rails down. When the machine is in operation it makes a great deal of noise and causes considerable vibration. The jack-setter, as he works before the machine, looks out for loose roof, and, if he discovers any, reports it to the machine-runner. It is the duty of the latter to see that the roof is secure or is made secure over the place of work as the crew moves forward.

The witnesses say the spragger and shoveler have no time to watch the roof. They rely upon the others whose duties are as stated.

The evidence tends to show that the accident occurred in what is known as Lonnie Robinson's room. Robinson testified the roof had been loose for some weeks before, and a part of it, back of the place of injury, had previously fallen; that the part of the roof which fell on this occasion had shown cracks for three or four days; that he sounded the roof each morning and afternoon and always found it "drummy;" that this sound meant it was loose. "Q. But you didn't think it was dangerous to work under it, did you? A. Why, sure, it was dangerous to work under; but, of course, I watched it. Q. But, at any event, you thought it was safe to continue to work under it? A. Yes, sir. Q. And you didn't think it necessary to put any props under it? A. No, sir." He also testified that it was a loader's duty to "sound the room" to determine its condition; and that the longer a loose roof stands the looser it becomes.

At the time of the injury to respondent the machine was in operation. Just previously the jack-setter had "found some loose roof." He notified the machine-runner, who did not stop the machine, but came forward and looked at the suspected place. He sounded the roof, but did nothing more, and said nothing, but returned to the machine and kept it going. Respondent, then acting as shoveler, knew nothing of this interchange or of the condition of the roof. He continued along with the machine. When respondent, in the performance of his duties, had reached the spot immediately beneath the loose roof, a part of it, about twenty feet long and several feet wide, fell. The slab which struck him weighed fifteen hundred pounds or more. He was seriously injured.

I. (1) Appellant contends that there was no evidence tending to prove the roof was in such dangerous

condition that it was incumbent upon it to do more than
the evidence shows was done; that the only testimony
in the record upon the point was offered by respondent,
and it shows that inspection was made, and that it was
made with due care by those whose duty
it was to make it, and that it is affirmatively
shown that this inspection disclosed no
condition so dangerous as to call for further precaution.
It is insisted that this appears from Taylor's testimony,
and that his testimony is all the evidence there is upon
the subject. Appellant concedes that "any evidence of
a dangerous condition of which appellant had knowledge,
either actual or constructive, would be sufficient to take
the case to the jury." It also concedes that "respondent
would not be bound by the testimony of one witness if it
was in conflict with his other testimony," but urges that
Taylor was the only witness to the point and his
testimony disproved the need for further precautions.
There is no question that the burden was upon respond-
ent to show negligence. It is clear that it was the duty
of appellant to use ordinary care to render respondent's
working place reasonably safe (Clark v. Iron Foundry
Co., 234 Mo. l. c. 449, 450) and that the care required is
such "as a reasonably prudent man would exercise un-
der like circumstances in order to protect his servants
from injury. It must be commensurate with the char-
acter of the service required and with the dangers that a
reasonably prudent man would apprehend under the cir-
cumstances of each particular case. Obviously, a far
higher degree of care and diligence is demanded of the
master who places his servant at work digging coal be-
neath overhanging masses of rock and earth in a mine
than of him who places his employee on the surface of
the earth, where danger from superincumbent masses is
not to be apprehended. "[Railway Co. v. Jarvi, 53 Fed.
65; Western Coal & Mining Co. v. Ingraham, 70 Fed.
l. c. 220, 221.] It is not denied the duty of inspection
rested upon appellant, and there is no contention that

Inspection:
Demurrer:
Opinion.

negligence, if any, on the part of those chosen by appellant to perform this duty for it, is negligence for which it is responsible. It is simply contended that respondent has affirmatively shown by uncontradicted evidence that the duty of inspection was properly performed and no cause of apprehension of danger discovered and that this ends the case. In a respect or two, so far as concerns the question under consideration, appellant is in error as to the status of Taylor, the jack-setter. There was ample evidence from which the jury could have found that the jack-setter had nothing to do with roof inspection except, since he worked ahead of the machine, to call the attention of the machine-runner to loose roof, and that this duty did not depend upon anything except a discovery of loose rock and did not entail any responsibility upon his part except that of notifying the machine-runner of it, whose duty it was to inspect the place thus called to his attention and determine what was to be done. Upon this view the testimony of Taylor that he did not think the loose rock he discovered was dangerous is not the conclusion of an inspector, but the opinion of one charged with no duty to determine the question of safety. In addition, Taylor, on this conception of his functions, had the right to rely upon the machine-runner's judgment, as that of the master (Hall v. Coal & Coke Co., 260 Mo. l. c. 366), and the jury might well have attributed his opinion to such reliance and, therefore, have given it no weight, even as an opinion of the condition of the roof. Brammett, the machine-runner, was not a witness. Taylor's testimony as to what he, Taylor, thought Brammett thought about the roof had no considerable probative force. It was a mere inference from Brammett's action in proceeding with the work without pulling down or propping the rock. If such an inference drawn by Taylor is conclusive, then the inference the court might draw from the same act would also be conclusive, and no recovery could be had in any case where the person charged with the duty of inspection permitted the work to proceed. This is not a case in which the

presumption that the inspector performed his duty is all the record presents on the question, and the case is, therefore, unlike Haggard v. McGrew Coal Co., 200 S. W. 1072. The roof had been loose for weeks. A part of it had fallen a few days before. For three or four days it had been cracked at the point at which it fell. The lapse of time increased the liklihood that it would fall. The vibrations of the machine enhanced the danger further and more and more as the machine passed under the loose rock. The removal of the jack after the machine passed was one of respondent's duties which brought him under the rock and which, of itself, further increased the danger of a fall. Robinson testified it was dangerous. He thought he could work under it without injury, with care. He did so. His position was unlike that of respondent. All the facts were before the jury, and the question of reasonable care, including that in performing the duty to inspect, was for the jury. The point is well settled. [Bowen v. Ry. Co., 95 Mo. 1. c. 275; Anderson v. Western Coal & Mining Co., 138 Mo. App. 1. c. 80; Hoover v. Western Coal & Mining Co., 160 Mo. App. 1. c. 330; Lackland v. Coal & Mining Co., 110 Mo. App. 634; Williams Coal Co. v. Cooper, 138 Ky. 1. c. 298; Mammoth Vein Coal Co. v. Looper, 87 Ark. 1. c. 219, 220; McCarthy v. Coal Co., 149 Ill. App. 1. c. 278, 243 Ill. 185; H. & H. Coal Mining Co. v. Schmidt, 104 Fed. 1. c. 284, 285; Spevack v. Coaldale Fuel Co., 152 Iowa, 1. c. 96, 97.

(2) Respondent was not conclusively shown to have known of the dangerous condition of the roof and the attendant risk, and the jury could have found, on the evidence, that he did not know of the one and appreciate the other. If he did not he had the right to rely upon the assumption that the master had used ordinary care to make the place reasonably safe and the right to infer safety from the course pursued by the machine-runner whose duty it was to see to the safety of the mine roof. [Hall v. Coal & Coke Co., 260 Mo. 1. c. 366; Clark v. Iron & Foundry

Knowledge of Danger.

Co., supra, l. c. 450; Corby v. Tel. Co., 231 Mo. l. c. 440, 441; Davis v. Turner, 69 Ohio St. l. c. 119; Wellston Coal Co. v. Smith, 65 Ohio St. 70, 87 Am. St. 547.] Nor is it conclusively shown that the danger was so glaring and obvious that a conclusive inference of contributory negligence arose. [Hall v. Coal & Coke Co., supra; Western Coal & Mining Co. v. Ingraham, 70 Fed. l. c. 223, et seq.; Bunker Hill Mining Co. v. Jones, 130 Fed. l. c. 818; Smith v. Kansas City, 125 Mo. App. l. c. 157.]

(3)  There was no assumption of risk conclusively shown.  This appears from the principles already stated and decisions already cited, and from Carter v. Baldwin, 107 Mo. App. l. c. 229.  The general rule is that the doctrine of assumption of risks in mines ''presupposes that the master has performed the duties of caution, care and vigilance which the law casts upon him.  It is those risks alone which cannot be obviated by the adoption of reasonable measures of precaution by the master which the servant assumes.''  [Pantzar v. Mining Co., 99 N. Y. 368; Watson v. Coal Co., 52 Mo. App. 366; Superior Coal Co. v. Kaiser, 229 Ill. l. c. 32, 33; Bunker Hill Mining Co. v. Jones, 130 Fed. l. c. 819; Clark v. Iron & Foundry Co., supra, l. c. 450, 451.]

(4)  It is suggested that the rule that the duty of the master to use ordinary care to make the employee's place of work reasonably safe does ''not apply in all its fullness and strictness to cases where the place of the employee's work was transitory or was shifting from time to time.''  This is the rule which exempts the employer in case a fall injures a miner working in his ''room.''  The respondent's place of work had nothing to do with changing the roof, in the sense of the rule invoked.  It was the machine-runner's duty to use ordinary care in the circumstances to see that the roof was reasonably safe, and, in doing so, to take into consideration what was about to be done beneath it.

**Shifting Place.**

II. The objections to instruction one have been answered by this court in Garard v. Coal & Coke Co., 207 Mo. 1. c. 258 et seq. The cases were discussed in that decision. The instruction in this case is substantially *Instruction.* the same as that approved in the Garard and cited decisions. In this case, also, instructions given for appellant further presented the rule from appellant's point of view and cleared up all uncertainty, if any, in respondent's instruction.

III. The final contention is that the damages are excessive. The evidence tends to show that the spinous processes of the eleventh and twelfth dorsal vertebrae were fractured; that bony lumps had resulted from *Excessive* nature's effort to remedy this and enlarge-*Damages.* ments had formed which impigned somewhat "upon the nerves" and caused pain; that there was no paralysis and, judged from an examination seven months after the injury, no reasonable likelihood of it resulting thereafter; that respondent had suffered much pain and still suffered some; that this inhibited use of the legs, and he was unable to get about except with the aid of crutches; that it was unlikely he could resume the vocation of mining or engage in any work which would require lifting; that he was likely to continue to suffer pain to some extent; that there was still considerable irritation of the nerves and, as one of respondent's witnesses put it, his condition is "more or less permanent. I don't mean that the man is totally disabled for his life, but he is more or less permanently disabled, I think, undoubtedly." There was probably no injury to the spinal cord, itself. Respondent had some trouble about sleeping regularly and a little with voiding urine. There did not appear to be anything the matter with the organs of the body or their performance of their functions, nor with his general health, except as stated. Respondent's age was thirty-one. He was earning $5 per day for the time he worked. His experts

testified he probably could work at other things, but not at manual labor, particularly if lifting· was required. After a consideration of these facts, the court is of the opinion that the judgment is somewhat too large.    If respondent will within ten days remit $5,000, the judgment will be affirmed for $15,000 as of the date of the verdict; otherwise, the judgment will be reversed and the cause remanded for new trial.    All concur.