HARDY CUNNINGHAM AND MAMIE CUNNINGHAM, HIS WIFE, RESPONDENTS, v. THE DOE RUN LEAD COMPANY, A CORPORATION, APPELLANT.*

St. Louis Court of Appeals. Opinion filed June 15, 1926.

1.—Appellate Practice—On Appeal Facts Viewed in Light Most Favorable to Respondent. On appeal, in view of the various contentions, the appellate court will state the facts in the light most favorable to the respondent that the evidence warrants, giving respondent the benefit of such inferences as may be reasonably drawn therefrom.

2.—Master and Servant—Evidence—Relationship Established—Independent Contractor—Negligence. An employee, employed as a drillman in blasting or driving a drift in a lead mine, hired and paid by the master, all tools and operating machinery for drills furnished, and the master reserving the right to discharge the employee, such employee cannot be held to be an independent contractor as a matter of law.

3.—Same—Mining Lead—Shoveler in Mine—Vice Principal—Not Fellow Servant. An employee of defendant, employed as a shoveler in a lead mine, whose duty it was to inspect the drift after blasts for missed shots and, if any were found, to discharge them, and whose gross negligence in failing to discover and fire missed shots of dynamite, or to warn drillers of unfired shots, resulting in the death of plaintiff's son, a drillman, **held** to be a vice principal of defendant and not a fellow servant of deceased, with respect to the duty to inspect the face of the drift for missed shots and to discharge such missed shots, if any were found, and with respect to the duty to warn the drillman of the missed shots, which he knew were in the face of the drift but neglected to fire.

4.—Same—Death of Servant—Mining Lead—Negligence—Assumption of Risks. A drillman working in a drift in a lead mine, killed by the discharge of a "missed shot," of which the master had negligently failed to warn him, **held** not to have assumed the risk as a matter of law.

5.—Same—Same—Same—Same—Discovery and Firing Missed Shots—Contributory Negligence. Where a drillman employed in blasting or driving a drift in a lead mine relied on defendant's employees performing the duty of discovering and firing "missed shots" of dynamite set by him, but such employees negligently failed to fire such shots or warn the drillman of unfired shots, a drillman who looked for "missed shots" and failed to discover any **held** not guilty of contributory negligence as a matter of law in an action for damages for the wrongful death of the drillman resulting from the explosion of a "missed shot."

6.—Same—Duty of Master—Assumptions. A servant has a right to assume that the master would faithfully discharge the duty of warning him of known danger.

7.—Instructions—Master and Servant—Death of Servant—Acting Within Scope of Employment—Undefined. The term "acting within the scope of his employment as a servant of the defendant" used in an instruction need not be defined.

**8.—Same—Failure to Request—Cannot Complain on Appeal.** In an action for damages for wrongful death, where defendant claimed that the deceased was a servant of plaintiff, an independent contractor, and failed to request an instruction defining the term "acting within the scope of his employment as a servant of the defendant," defendant cannot complain on appeal that such instruction was not given.

**9.—Damages—Excessive Damages—Death of Minor—Verdict of $3500 Not Excessive.** A verdict for $3500 to parents for the death of a son nineteen years and twenty-three days old, earning $6.30 per day as a drillman in a lead mine and turning over the entire wages to his parents, **held** not excessive.

---

*Corpus Juris-Cyc. References: Appeal and Error, 3CJ, p. 850, n. 24; p. 855, n. 39; 4CJ, p. 764, n. 80; p. 771, n. 58; Death, 17CJ, p. 1350, n. 7; Master and Servant, 39CJ, p. 615, n. 671; p. 616, n. 75; p. 827, n. 44; p. 829, n. 75; p. 871, n. 89; p. 881, n. 88 New; p. 1108, n. 22; p. 1109, n. 33; p. 1193, n. 29; p. 1218, n. 50; p. 1219, n. 61; p. 1226, n. 32. Trial, 38Cyc,.p. 1688, n. 19; p. 1689, n. 20.

Appeal from the Circuit Court of Jefferson County.— Hon. E. M. Dearing, Judge.

AFFIRMED.

*Clyde Williams, C. J. Stanton,* and *P. S. Terry* for appellant.

(1)   The demurrer offered by the defendant at the close of plaintiff's case and again at the close of the whole case should have been sustained for the reason:   (a)   That under the evidence defendant was not shown to be guilty of any act of negligence.   Hulse v. Telephone Co., 164 Mo. App. 126; Kellerman v. Telephone Co., 189 Mo. App. 511-512; Knorpp v. Wagner, 195 Mo. 637; Barnett v. Star Paper Mill, 149 Mo. App. 489; Livengood v. Lead & Zinc Co., 179 Mo. 229; Brands v. St. Louis Car Co., 213 Mo. 797-798; Chrismer v. Telephone Co., 194 Mo. 189, 208; Smith v. Light & Power Co., 148 Mo. App. 585; Miller v. Railroad, 175 Mo. App. 349, 352; Lee v. Gas Co., 91 Mo. App. 612; Glasscock v. Dry Goods Co., 106 Mo. App. 657. (b) The deceased and plaintiff Hardy Cunningham were lead miners and drillmen of experience.   They knew the danger as well as the master.   These drillmen knew the conditions better than the master.   The master is not compelled to be actively or constructively present so that men of experience will not hurt themselves. He may trust experienced men because when he hires experienced men he is presumed to hire not only the bodily services of the man (his hands, his eyes, muscles and legs), but the skill and knowledge pertaining to the servant's art or trade and possessed by the latter. The duty of inspecting the mine was not that of the master, but it belonged to the servant.   For this reason plaintiff and deceased were guilty of contributory negligence. Knorpp v. Wagner, 195 Mo. 637;

Livengood v. Lead & Zinc Co., 179 Mo. 229; Forbes v. Dunnavant, 198 Mo. 209; Barnett v. Star Paper Mill, 145 Mo. App. 498; Hulse v. Telephone Co., 164 Mo. App. 126; Smith v. Light & Power Co., 148 Mo. App. 585; Miller v. Railroad, 175 Mo. App. 349, 352; Modlagl v. Iron & Foundry Co., 248 Mo. 599; Humphrey v. Lusk, 196 Mo. App. 442; 4 Thompson on Negligence, secs 4284, 4703. (c) That all of the testimony shows that Ostil L. Cunningham was doing construction work; that the place around where he was working was, by reason of that fact, changing and the defendant is exempted from the rule that it must use reasonable care to furnish its employees with a reasonably safe place to work. 4 Thompson on Negligence, sec. 4705; Pippin v. Construction Co., 187 Mo. App. 360; Gibson v. Bridge Co., 112 Mo. App. 594; Bradley v. Tea & Coffee Co., 213 Mo. 326; Mehan v. Railroad, 114 Mo. App. 396; Finyalson v. Utica Mining & Milling Co., 67 Fed. 507; Gulf C. & S. F. Ry. v. Jackson, 65 Fed. 48. (d) Hardy Cunningham was an independent contractor. Morgan v. Bowman, 22 Mo. 538; Kiser v. Suppe, 133 Mo. App. 19. (2) The evidence shows conclusively that plaintiff, Hardy Cunningham, and the deceased, Ostil L. Cunningham, assumed the risk of the injury complained of. Livengood v. Lead & Zinc Co., 179 Mo. 229; Forbes v. Dunnavant, 198 Mo. 209; Knorpp v. Wagner, 195 Mo. 637. (3) It has been said that the damage from missed shots, being incident to the work of drilling and blasting in mines, it is not the duty of the master to make inspection for missed shots after the firing of each blast, but that this is a duty resting upon the miners themselves. 4 Thompson on Negligence (2 Ed.), sec. 3923; Brown v. King, 100 Fed. Rep. 561. (4) The duty of inspecting after the discharge of shots to ascertain whether or not there is an unexploded charge is a delegable duty, as is any duty incidental to a servant's employment and the negligence of the one to whom the duty has been delegated to make an examination is not negligence of the master, especially when the servant's knowledge is superior to the master's. Livengood v. Lead & Zinc Co., 179 Mo. 229; Knorpp v. Wagner, 195 Mo. 637; Trainer v. Mining Co., 243 Mo. 359; Forbes v. Dunnavant, 198 Mo. 193; Modlagl v. Iron & Foundry Co., 248 Mo. 587; Shelton v. Light Co., 167 S. W. 544; Anderson v. Construction Co., 178 S. W. 737; Perry v. Mining Co., 175 S. W. 140. (5) The custom is the test and although there may be a better or less dangerous method of doing work no jury can be permitted to say that the usual and ordinary way commonly adopted by those in the same business is a negligent way for which liability shall be imposed. Corn v. Lounge Co., 222 Mo. 506; Chresmer v. Telephone Co., 194 Mo. 189; Wrinkler v. Basket Co., 137 Mo. 394; Curtis v. McNain, 173 Mo. 270; Minnier v. Railroad, 167 Mo. 113; Harvey v. Smelting Co., 205 S. W. 93. (6) To use technical, legal terms in an instruction

without defining them is error. Reybourne v. Phillips, 140 S. W.
977; Dalton v. Redemeyer, 154 Mo. App. 190, 197; Magrane v. Rail-
road, 183 Mo. 119, 132; Turnbow v. Dunham, 272 Mo. 65; Lumber
Co. v. Pollinger, 165 Mo. App. 442; Gardner v. Railroad, 167 Mo.
App. 605; Dunnigan v. Briggs, 170 Mo. App. 691; Beggs v. Shelton,
173 Mo. App. 127; Wiser v. Chesley, 53 Mo. 547; Dry Goods Co. v.
Schooley, 66 Mo. App. 406; Digby v. Insurance Co., 3 Mo. App.
603; State v. Johnson, 111 Mo. 578; Horine v. Berry County, 69
Mo. App. 481; I. C. Ry. C. v. Nelson, 203 Fed. 956.    (7)    The ver-
dict of the jury is excessive.    The measure of parents' damages for
the loss of a minor child is the value of his services during his mi-
nority, and burial and other expenses incurred by his death and
sickness, less the expense of his support and maintenance during that
time.    Degan v. Jewell, 239 S. W. 66; Meeker v. Union Electric L. &
P. Co., 216 S. W. 933.

*Joseph J. Cooney, R. E. Kleinschmidt* and *Charles E. Morrow* for
respondents.

(1)    The demurrer to the evidence was properly overruled.    (a)
Mr. Wampler was a servant of the defendant to whom it had en-
trusted the duty of inspection for unexploded charges and who the
defendant had directed to discharge them to protect the deceased,
a drill man, from danger, and in this matter he was a vice-principal
under the statutes applicable to mines, and the defendant is liable
for his negligence.    R. S. 1919, sec. 4234.    Mr. Wampler was also
a vice-principal under the provisions of the statute applicable to
mines defining fellow servants, because he and the deceased were not
working together at the time and place and to a common purpose of
the same grade.    R. S. 1919, sec. 4235.    At common law Mr. Wampler
and deceased were not fellow servants.    1.    Because they were work-
ing on different shifts at different times and were not so associated
in their work that they could observe each other's conduct and report
any delinquencies to a common correcting head.    Koerner v. St.
Louis Car Co., 209 Mo. 141.    2.    Because defendant had delegated
to him the performance of a duty to deceased which defendant at
least had impliedly agreed to perform in person, and Mr. Wampler
was the agent selected by defendant to perform it.    Koerner v. St.
Louis Car Co., 209 Mo. 141; Shannon v. Mining Co., 24 Wash. 119.
3.    The duty to remedy and to warn the servant of a danger known
to the master is a positive nondelegable duty of the master.    Deweese
v. Mining Co., 54 Mo. App. 476; Affirmed, Deweese v. Mining Co.,
128 Mo. 423; Rodney v. Railroad, 127 Mo. 676; Hysell v. Swift &
Company, 78 Mo. App. 39; Dowling v. Gerard B. Allen & Co., 74
Mo. 13.    Even an inferior servant to whom the master has delegated a

positive duty which he owes another servant is a vice-principal as to that particular duty and his negligence in respect to the performance or nonperformance thereof renders the master liable. Mitchell v. Ice & Fuel Co., 206 Mo. App. 271; White v. Montgomery Ward & Co., 191 Mo. App. 268; Zellars v. Water & Light Co., 92 Mo. App. 107. The knowledge of Wampler as a vice-principal is the knowledge of defendant. Sullivan v. Railroad, 107 Mo. 66; Banks v. Railroad, 40 Mo. App. 458; Dedrick v. Railroad, 21 Mo. App. 433; Mitchell v. Ice & Fuel Co., 206 Mo. App. 271; 26 Cyc. 1147. Under the statute applicable to mines the defendant is liable for the negligence of Mr. Wampler in failing to perform his duty as a servant of the defendant even if he were a fellow servant of deceased. R. S. 1919, sec. 4233; Martin v. Coal Co., 174 Mo. App. 441. (b) Neither the deceased or his father were guilty of contributory negligence as a matter of law. Mount v. Mining Co., 294 Mo. 603; Seals v. Whitney, 130 Mo. App. 412; Deweese v. Mining Co., 54 Mo. App. 476; Willis v. Railroad, 44 Mo. App. 51. The deceased and his father had the right to rely upon the presumption that Wampler had performed his duty. Mount v. Mining Co., 294 Mo. 603; Merrett v. Railroad, 81 Minn. 469; 26 Cyc. 1234, 1235. Nor did the evidence conclusively show that the danger was so glaring and obvious that a conclusive inference of contributory negligence arose. Mount v. Mining Co., 294 Mo. 603; Hall v. Coal & Coke Co., 260 Mo. 351. (c) This case falls within several exceptions to the general rule that where the conditions are transitory and changing, the safe place to work doctrine does not apply. Aldridge v. Furnace Co., 78 Mo. 559; Hammon v. Coal & Coke Co., 156 Mo. 232; Greenstein v. Iron & Foundry Co., 178 S. W. 1179; Savage v. Building & Contracting Co., 214 S. W. 290; Frazier v. Refining Co., 150 Mo. App. 419; Kessell v. Mining Co., 44 Mont. 445; Crist v. Gas Co., 72 Kan. 135; Coffeyville, etc., Brick Co. v. Shanks, 69 Kan. 306; White's Personal Injuries in Mines, pp. 47, 48. (d) The deceased and his father were both servants of defendant. The father of the deceased was not an independent contractor as a matter of law. Diehl v. Fire Brick Co., 253 S. W. 984; Lawhon v. St. Joseph, etc., Laboratories, 252 S. W. 44; Gayle v. Missouri Car Co., 177 Mo. 427; O'Neill v. Blase, 94 Mo. App. 648; Porter v. Wethias Estate Co., 201 Mo. App. 27; Fitzgerald v. Cardwell, 207 Mo. App. 514. (2) Neither deceased nor his father assumed as a matter of law the risk of the danger which caused the death of deceased. The servant never assumes risks and dangers caused by the negligence of the master, but only those arising after the master has performed his duties. Mount v. Mining Co., 294 Mo. 603; Knorpp v. Wagner, 195 Mo. 637. (3) The usual custom at other places is immaterial and will not control in this case, because the defendant had entrusted Wampler with the duty of inspecting for

unexploded blasts and fire the same. Knorpp v. Waggner, 195 Mo. 637. (4) The language used in plaintiff's instruction complained of is not technical or legal, but ordinary English which is well understood by everyone, and no definition was necessary. (5) It is not contended that the mother was guilty of contributory negligence in any respect. Contributory negligence on the part of the father alone is not sufficient to bar a recovery, for it cannot be imputed to the mother, who is a coplaintiff and has a separate property in half of the judgment. Phillips v. Denver City Tramway Co., 53 Colo. 458; Wolf v. Railroad, 55 Ohio St. 517; Cleveland R. Co. v. Crawford, 24 Ohio St. 631; Donk Bros. Coal Co. v. Leavitt, 109 Ill. App. 385. (6) The verdict and judgment are not excessive. The amount of damages was largely in the discretion of the jury. Ventimiglia v. Heiman Mfg. Co., 256 S. W. 139.

SUTTON, C.—This is an action for damages for the wrongful death of Ostil L. Cunningham, the minor son of plaintiffs. The defendant is a Missouri corporation, and at the time of the injury which caused the death of the plaintiffs' son, was engaged in operating a mine producing lead ore in St. Francois County, Missouri, and the plaintiffs' son and the plaintiff Hardy Cunningham were employed as drill men in blasting or driving a drift in said mine. Ben Wampler and Roy McDowell were employed on the same drift as shovelers. In their employment the plaintiff Hardy Cunningham and his son drilled blast holes in the face of the drift, loaded the holes with dynamite, and discharged the blasts, and Wampler and McDowell followed and cleaned up the debris resulting from the blasts, inspected the face of the drift for missed shots, and, if they found any, discharged them. On Friday Hardy Cunningham and his son drilled twenty-two holes in the face of the drift, and loaded and fired successively three blasts, and thereupon left the mine. On the following day Wampler and McDowell cleaned up the debris, inspected the face of the drift, and discovered two missed shots, but neglected to fire them or to warn plaintiff Hardy Cunningham or his son of the presence of the missed shots in the face of the drift and their failure to fire them. On the following morning about seven o'clock plaintiff Hardy Cunningham and his son returned to the mine and began drilling in the face of the drift, and while so engaged one of the missed shots was discharged, and the plaintiffs' son was thereby killed.

The cause was tried to a jury, there was a verdict and judgment in favor of the plaintiffs for $3,500, and the defendant appeals.

The defendant assigns error upon the refusal of its demurrer to the evidence. In support of this assignment the defendant contends: (1) That under the evidence defendant was not shown to

be guilty of any act of negligence; (2) that plaintiff Hardy Cunningham was an independent contractor and the plaintiffs' son Ostil L. Cunningham and the other employees Ben Wampler and Roy McDowell were servants of Hardy Cunningham as contractor and were not the servants of defendant; (3) that plaintiffs' son Ostil L. Cunningham and the other employees Ben Wampler and Roy McDowell were fellow servants; (4) that the evidence conclusively shows that plaintiff Hardy Cunningham and his son assumed the risk of the injury complained of; and (5) that the evidence conclusively shows the plaintiff Hardy Cunningham and his son guilty of contributory negligence.

We will state the facts in view of these contentions and in the light most favorable to the plaintiffs that the evidence warrants, allowing the plaintiffs the benefit of such inferences as may be reasonably drawn therefrom.

Plaintiffs' son Ostil L. Cunningham was killed on April 16, 1923. He was slightly more than nineteen years of age at that time and was in the employ of the defendant, having been employed by the defendant's employment agent. He commenced work for defendant on the same day that plaintiff Hardy Cunningham commenced work. The deceased was paid by defendant by the day. He was paid by check. The check was handed to him at one window, and cashed at another window at defendant's office. Frank Murphy, defendant's mine superintendent, employed Hardy Cunningham and directed him to work at drift No. 10. It was agreed that defendant would pay him a minimum wage of $4.20 a day, with a bonus. The drift work was rated at $5 per foot, and after the expenses of labor and materials incurred in driving the drift were paid, if there was anything left over, Hardy Cunningham received it. The minimum wage of $4.20 per day was paid him and also a bonus, the amount of which was determined by the number of feet the drift was driven. The bonus was paid by defendant by bonus checks. The bonus checks were marked in red letters "Bonus Check." Hardy Cunningham and the deceased worked together on drift No. 10 as drill men. They were the only drill men working on this drift. Holes were drilled into the face of the drift by means of drills operated by compressed air. The drills and the compressed air and all other tools and implements were furnished by the defendant. The drift was four hundred feet beneath the surface. It was about ten feet wide and about seven feet high. The compressed air was fed through pipes to the drills operated by the drill men, by machinery operated by defendant on the surface. After the holes were drilled they were cleaned out and loaded with dynamite. Fuses, which were cut different lengths, were attached to each charge. These fuses were lighted and then the drillers would get out of the way until the shots were

fired. On Friday before the deceased was killed, he and Hardy Cunningham drilled twenty-two holes in the drift, and first loaded four and fired them, and then loaded four more and fired them, and the last time loaded fourteen and lighted the fuses and got out of the way.

Hardy Cunningham testified that it was usual to count the number of explosions, and that he counted the explosions on that occasion and thought he had counted correctly and that all the charges had been exploded, and that he and his son then went home and did not return to work until the next Monday morning.

There were two different shifts working on this drift. Plaintiff Hardy Cunningham and the deceased were the drillers, and they worked on one shift. Wampler and McDowell, the shovelers who cleaned up the debris knocked down by the blasts, worked on the other shift. Hardy Cunningham and the deceased did not work in the mine at the same time that Wampler and McDowell worked. After Hardy Cunningham and the deceased fired the shots and left on Friday, Wampler and McDowell followed on Saturday on the next shift and cleaned up the debris, and discovered two charges of dynamite in the face of the drift which had not been discharged, but it was pay day and they were in a hurry to get their pay and forgot to discharge them. It was one of these charges that exploded and killed the deceased.

Wampler and McDowell had been continuously working for the defendant for several years prior to the accident which resulted in the death of plaintiffs' son. Wampler was employed by Frank Murphy, defendant's superintendent. McDowell was employed by the drift boss. They were paid by defendant by checks given to them at one window and cashed at another in defendant's office. Wampler was directed to work on drift No. 10 by the superintendent, and McDowell was directed to work there by the drift boss.

The defendant furnished the fuses, caps, dynamite, and powder. Cunningham did not furnish anything.

Cunningham had been a miner for about twenty years, was an experienced driller, and had handled dynamite for fifteen years. His son was nineteen years and twenty-three days old at the time of his death, and he commenced working at the mine in 1920. He went to work on drift No. 10 in the fall of 1922, and had something like seven or eight months' experience as a driller at the time of his death. Wampler and McDowell were experienced miners.

Plaintiff Hardy Cunningham was the only man working on drift No. 10 who got a bonus. He was responsible for his part of the work, but there were no other men who were subject to his orders. He had authority, if a man did not suit him, to go to the shift boss and have the man removed, but he did not have any authority to remove a man himself. He was doing the work in drift No. 10 from the fall of

1922 until April 16, 1923. It was his duty to keep the drift straight. The surveyors and engineers determined the lines, and figured out where the drifts would be made.

Hardy Cunningham, the deceased, Wampler, and McDowell all carried defendant's time cards, and had to use the time cards when they came to work, the same as the other employees. All the men working on drift No. 10 at the time deceased was killed were men that the defendant had formerly employed, and they continued in the employ of defendant up to the time of the death of the deceased. All these men were employed by defendant's superintendent, or with his permission, and could not have been employed, or work there, without his permission, and could not have been discharged without his permission. He reserved the right to discharge Cunningham, or stop the work on the drift, whenever he wanted to.

As already said, the work of driving the drift was prosecuted by two shifts, one known as the drill men, and the other known as the shovelers, and plaintiff Hardy Cunningham and the deceased constituted a shift known as the drill men, and Wampler and McDowell constituted the shift known as the shovelers. The defendant's superintendent had directed and committed to Wampler the duty to look for and make inspection to discover any unexploded charges of dynamite which remained in the face of the drift after the blasts had been fired, and had directed him to discharge any unexploded charges which he found, in order to protect the drill men who would follow upon the next shift. Wampler had been performing that duty and Hardy Cunningham and his deceased son were aware that Wampler had been so instructed by the defendant. It was not unusual for some of the dynamite charges to fail to be discharged and to be left in the face of the drift where the drill men were required to work, and if left undischarged therein were liable to be discharged and injure the drill men, and rendered the place where they were required to work unsafe and dangerous. On Friday Hardy Cunningham and his deceased son drilled and loaded the holes in the face of the drift and fired the blasts, and left the mine, as stated. Saturday, the next day, Wampler and McDowell came to work at said place to clean up the debris, and they discovered two undischarged charges of dynamite in the face of the drift. It was pay day and they were in a hurry to get away and they failed to discharge these unexploded charges of dynamite because they were in a hurry to get their pay, and forgot it. When Wampler and McDowell had about gotten out of the shaft Wampler referred to the fact that they had not discharged the unexploded charges of dynamite, but they went on and got their pay and went home. Wampler testified that he intended to notify Hardy Cunningham and his son that he had not discharged the charges, that he intended to notify

them the next morning, but that the next morning when his wife woke him up he turned over and went back to sleep, and failed to do so. Hardy Cunningham and his deceased son again went to work on the next Monday morning, and Hardy Cunningham looked to see if there were any missed shots in the face of the drift, and did not see any, and he and his deceased son set up their drills and went to work, and in a short time the drill of Hardy Cunningham came in contact with one of these unexploded charges of dynamite and caused it to explode, whereby his son was killed.

It is clear without discussion that we may not say as a matter of law that plaintiff Hardy Cunningham was an independent contractor. [Diehl v. Green Fire Brick Co., 299 Mo. 641, 253 S. W. 984; Lawhon v. St. Joseph Veterinary Laboratories (M.), 252 S. W. 44; Fitzgerald v. Cardwell, 207 Mo. App. 514, 226 S. W. 971; Porter v. Withers Estate Co., 201 Mo. App. 27, 210 S. W. 109; O'Neill v. Blase, 94 Mo. App. 648, 68 S. W. 764; Thomassen v. West St. Louis Water & Light Co. (Mo.), 278 S. W. 979, and cases there cited. It is equally clear that Wampler, whose gross negligence resulted in the death of the plaintiffs' son, was a vice-principal of the defendant, and not a fellow servant of the deceased, with respect to the duty to inspect the face of the drift for missed shots and to discharge such missed shots if any were found and also with respect to the duty to warn the drill men of the missed shots which he knew were in the face of the drift but neglected to fire. [Secs. 4233, 4234, 4235, R. S. 1919; Koerner v. St. Louis Car Co., 209 Mo. 141, 107 S. W. 481; Shannon v. Consolidated Tiger and Poorman Mining Co., 24 Wash. 119; Deweese v. Meramec Iron Mining Co., 54 Mo. App. 476; Deweese v. Meramec Iron Mining Co., 128 Mo. 423, 31 S. W. 110; Rodney v. St. Louis Southwestern Ry. Co., 127 Mo. 676, l. c. 689, 28 S. W. 887; 30 S. W. 150; Hysell v. Swift & Co., 78 Mo. App. 39, l. c. 45; Mitchell v. Polar Wave Ice & Fuel Co., 206 Mo. App. 271, 227 S. W. 266; White v. Montgomery Ward & Co., 191 Mo. App. 268, 177 S. W. 1089; Zellars v. Missouri Water & Light Co., 92 Mo. App. 107; Sullivan v. Hannibal & St. Joseph R. Co., 107 Mo. 66, 17 S. W. 748; Banks v. Wabash Western Ry. Co., 40 Mo. App. 458; Dedrick v. Missouri Pacific R. Co., 21 Mo. App. 433; Martin v. Farmers' Coal Co., 174 Mo. App. 441, 160 S. W. 816; Mount v. Western Coal & Mining Co., 294 Mo. 603, 242 S. W. 943; Hamman v. Central Coal & Coke Co., 156 Mo. 232, 56 S. W. 1091; Greenstein v. Christopher & Simpson Architectural Iron & Foundry Co. (Mo. App.), 178 S. W. 1179; Savage v. Raterman Bldg. & Contracting Co. (Mo. App.), 214 S. W. 290; Frazier v. St. Louis Smelting & Refining Co., 150 Mo. App. 419, 130 S. W. 485; Knorpp v. Wagner, 195 Mo. 637, 93 S. W. 961.] Nor can it be said that assumption of the risk or contributory negligence was shown as a

matter of law. [Mount v. Western Coal & Mining Co., 294 Mo. 603, 242 S. W. 943; Williams v. Pryor, 272 Mo. 613, l. c. 621, 200 S. W. 53; Seals v. Whiting, 130 Mo. App. 412, 110 S. W. 35; Wills v. Cape Girardeau Southwestern R. Co., 44 Mo. App. 51.]

The defendant's learned counsel argue with much earnestness that the evidence shows the plaintiff Hardy Cunningham and the deceased guilty of contributory negligence as a matter of law, in failing to discover the missed shots in the face of the drift before commencing the work of drilling therein on the morning of the fatal accident. We are unable to accept their view. The defendant by express direction committed to Wampler the duty to perform the service of inspecting the face of the drift for missed shots and to fire such missed shots if any were found. The defendant, through Wampler as its vice-principal, undertook to perform this service, and had performed this service habitually for a long period of time prior to the fatal accident. Of this plaintiff Hardy Cunningham and the deceased were aware. The defendant impliedly at least promised them that it would continue to perform this service, but it negligently failed to do so. It indeed performed the service of inspection, and discovered the missed shots lurking in the face of the drift, but it not only negligently failed to discharge the missed shots, but with knowledge of the presence of the missed shots in the drift, negligently failed to warn plaintiff Hardy Cunningham and the deceased thereof. They had a right to assume that the defendant would faithfully discharge its duty. The conduct of defendant was calculated to throw them off their guard and to cause them to omit to make the inspection they would otherwise have made. The face of the drift was rough and jagged. Plaintiff Hardy Cunningham looked for missed shots and discovered none. That the missed shots were not plainly visible may be reasonably inferred. Under the circumstances, neither the plaintiff Hardy Cunningham nor the deceased may be convicted of contributory negligence as a matter of law.

The defendant assigns error upon the giving of plaintiffs' instructions Nos. 1 and 2, on the ground that said instructions use, with reference to the deceased, the terms, "acting within the scope of his employment as a servant of the defendant," without defining them. It is urged that these are legal terms and should have been defined for the jury. These terms are ordinarily well understood and need not be defined. The failure to define them is important in this case only because of the contention made that the plaintiff Hardy Cunningham was an independent contractor and that the deceased was the servant of Hardy Cunningham as such contractor, and not the servant of the defendant. It is not contended that the instructions do not correctly declare the law of the case or that they affirmatively misdirect the jury. If a separate instruction had been requested and

given on behalf of the defendant defining the terms referred to and advising the jury as to the law relating to this phase of the case, such instruction would not have conflicted in any respect with the plaintiffs' instructions, but would have supplemented them, and the instructions taken together would have constituted a harmonious whole, fully and properly advising the jury as to all of the law of the case. The defendant's learned counsel did not see fit to request such an instruction, and we must assume that for reasons of their own they did not desire such an instruction to be given but preferred to have the jury determine the issues in the light of and guided only by the plaintiffs' instructions. They ought therefore not be heard to complain here that such an instruction was not given. [Berryman v. Southern Surety Co., 285 Mo. 379, l. c. 396, 227 S. W. 96; Lockwood v. Atlantic Mutual Insurance Co., 47 Mo. 50 l. c. 52.]

The defendant insists that the verdict is excessive. The deceased was nineteen years and twenty-three days old at the time he was killed. He was earning $6.30 per day, and worked five days per week. He was an able-bodied young man. His parents received all of his wages. He lived in the home of his parents as a member of the family. The expenses of his support and maintenance, according to the evidence viewed in the most favorable light for the plaintiffs, was about $14 per month. Computing the plaintiffs' damages on the basis of the net wages alone the deceased was earning at the time of his death, working five days per week, the damages do not fall far short of the amount of the verdict. But the jury were not bound to conclude that his earnings would not have been greater than this if his life had been spared to his parents during the remaining years of his minority. Nor were they bound to conclude that the services of the deceased resulting in the bringing of wages to his parents were all the services he rendered or would have rendered in the future to his parents. Under the facts and circumstances of this case, the jury were entitled to conclude that the deceased rendered and would have rendered in the future other valuable services to his parents. We do not think that the verdict should be disturbed for excessiveness. [Leahy v. Davis, 121 Mo. 227, l. c. 233, 25 S. W. 941; Degan v. Jewell, 293 Mo. 80, 239 S. W. 66.]

The Commissioner recommends that the judgment of the circuit court be affirmed.

PER CURIAM:—The foregoing opinion of SUTTON, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly affirmed. *Daues, P. J.,* and *Becker* and *Nipper, JJ.,* concur.